THE STATE BANK of Lock Haven, Respondent, *v.* JAMES W. SMITH and Another, Appellants, Impleaded with Others.

*Accommodation note — the obligation of the maker is that of a surety — laches — effect of, on the holder — profits realized by a judgment creditor from a purchase of real estate — extra allowance.*

Where two individuals exchanged their promissory notes, each payable to the order of the other, for the same amount, and each has the note payable to him discounted for his respective benefit, such notes are not accommodation notes.

Where a note is made by the maker thereof for the accommodation of the payee, and the payee after having procured the note to be discounted fails, any payments made by him or securities given by him to the bank discounting the note inure to the benefit of the maker whose obligation is that of surety.

The holder of negotiable paper loses no right against the surety thereon by merely remaining passive, and the act of the president of a bank in obtaining upon his individual judgment a priority of claim upon the personal property of the person primarily liable on a note held by the bank, prior to the obtaining by the bank of a lien upon such property, does not make the bank liable for a breach of duty and chargeable with the amount that would have been realized had the bank's judgment attached equally with that of its president upon the personal property of the person primarily liable on the promissory note.

A judgment creditor who purchases real estate of his debtor, sold under execution, for a certain amount, should only be charged as having received on his judgment the amount for which such real estate sold under the execution, and not the amount for which he has subsequently resold the same.

An action was brought upon certain promissory notes, the plaintiff asking judgment for the whole amount thereof on the theory that they were business paper. The defendant claimed that they were accommodation notes and insisted that the complaint should be dismissed. A judgment was rendered in favor of

the plaintiff in which it was adjudged that all but one of the notes were accommodation paper and an additional allowance was granted to the plaintiff in addition to costs. No offer to allow judgment to be taken was made on behalf of the defendant.

*Held,* that as the case was one in which difficult questions were involved, the granting of an extra allowance to the plaintiff was proper.

Appeal by the defendants, James W. Smith and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of September, 1894, upon the report of a referee, and also from an order of the Supreme Court, made at the New York Special Term and entered in said clerk's office on the 17th day of September, 1894, granting the plaintiff an extra allowance.

It appears from the pleadings and findings that the plaintiff is, and for many years has been, a banking corporation organized under the laws of Pennsylvania, and doing business at Lock Haven in Pennsylvania. That the defendants James W. Smith and Wilbur F. Smith during the same time were co-partners doing business under the name of J. W. & W. F. Smith, in Brooklyn in this State, and that the nominal defendants, Chandler P. Wainwright and Willis Bryant, were co-partners doing business under the firm name of Wainwright & Bryant, in Philadelphia.

The twelve notes held by the plaintiff on October 24, 1889 (of which the notes in suit are merely renewals), were dated from June 21, 1889, to September 17, 1889, and were made by the defendants Smith to the order of the defendants Wainwright & Bryant, indorsed by the latter and discounted by the plaintiff.

It was found by the referee that at or shortly prior to the times when defendants Smith made and delivered to Wainwright & Bryant these twelve notes, said Wainwright & Bryant made and delivered to defendants Smith their twelve notes of like date, tenor and terms, and for like amounts, and payable to the order of J. W. & W. F. Smith; the notes made by Wainwright & Bryant being sent to the Smiths in letters which in each case say substantially: "Inclosed please find our note (describing it), for which please send us duplicate," and the Smiths then returning their own notes as requested.

It was also found that these notes were thus exchanged pursuant

to an arrangement made in the latter part of 1884, at the request of Wainwright & Bryant, they promising the Smiths to send to them upon the maturity of the notes an amount of money equal to the face of the notes, unless said Smiths should have given notice that they had used any of the notes made by Wainwright & Bryant, each party to have the right to use any of the exchanged notes.

It appears that after this arrangement was made defendants Smith and Wainwright & Bryant began exchanging their paper thereunder, and so continued to do up to about October 24, 1889. The notes so made by Wainwright & Bryant and sent to the Smiths were payable in Philadelphia, and the notes so made by defendants Smith and sent to Wainwright & Bryant were payable at the Smiths' office in Brooklyn. Wainwright & Bryant were accustomed to and did send to defendants Smith money for the notes as agreed, and defendants Smith were accustomed to and did thereupon return Wainwright & Bryant's paper to them, except in a few instances in which defendants Smith made use of Wainwright & Bryant's paper by procuring the same to be discounted.

The Smiths invariably paid all the notes made by them according to their tenor, at their office, until after the failure of Wainwright & Bryant, and Wainwright & Bryant paid, according to their tenor, at their office, such notes of theirs as the Smiths had had discounted, and for the remaining notes sent the cash to the Smiths up to the time of their failure.

At the time of Wainwright & Bryant's failure, October 24, 1889, the plaintiff held the twelve notes, of which these in suit are the renewals; the defendants Smith held eleven of the counterpart notes made by Wainwright & Bryant, and the remaining note, one dated August 6, 1889, for $1,145.13, was held by the Eleventh Ward Bank, which had discounted it for the defendants Smith. The Smiths afterwards took up this note.

At the request of the defendants Smith the plaintiff has three times renewed the twelve notes held by it, the Smiths each time paying the interest or discount for such renewal, each renewal note being made and indorsed in the same form as the original note.

One William A. Simpson was the president of the plaintiff bank, its largest stockholder and practically its manager. He was also and had been for several years the financial backer of Wainwright &

Bryant; he had loaned them $50,000, and was the accommodation indorser on their paper to the extent of from $85,000 to $135,000 more. He received from them a royalty or definite payment, called "stumpage," on each load of timber cut, ostensibly as compensation for advice given in the management of their business. When Simpson loaned them the first $50,000, in November, 1884, they gave him a judgment note therefor, dated November 14, 1884, due one day after date, and containing a warrant of attorney, which under the laws of Pennsylvania enabled Simpson to enter judgment against them at any time. For subsequent indorsement Simpson got two other judgment notes, one dated January 14, 1885, for $60,000, and another dated August 19, 1887, for $75,000, each payable one day after date.

In addition to these obligations to Simpson, Wainwright & Bryant, on the 24th day of October, 1889 — which was the day of their failure — had paper to the extent of $122,313, including that made by the defendants Smith, discounted in the plaintiff bank. On October 24, 1889, Simpson with one Corss, the attorney for the plaintiff bank, met Wainwright & Bryant in Philadelphia, and it was there determined that they were unable to continue in business, and that they should give to the bank a judgment note as security for the paper that had been discounted by the bank for Wainwright & Bryant and which bore their indorsement. A list of the notes discounted in the bank was called off. Those indorsed by Simpson were omitted, because he already had a judgment note to secure them. A judgment note for $122,313 was then and there given to the bank, dated that day, payable one day after date. The judgment note was given as security for all the paper, including that made by defendants Smith, indorsed by Wainwright & Bryant, and then lying in the plaintiff bank, except the paper indorsed by Simpson. Simpson then had judgment notes several years old in his possession, and was president of the bank and acted for it. There were no directions given as to the application of the avails of the judgment notes. Simpson said that he was going to enter judgment on the bank's notes; nothing was said about his own.

On the twenty-sixth of October Mr. Simpson, through Corss, the attorney, caused judgments on the three notes already held by him and the note handed to him for the plaintiff to be entered, putting

his own three judgments first and issuing execution upon them first, so that they obtained a priority under the laws of the State of Pennsylvania as to the personal property of Wainwright & Bryant, but shared *pro rata* with the judgment in favor of the plaintiff as to the real estate. According to the law of Pennsylvania judgments entered on the same day participate equally in the avails of funds realized through execution against real property. As to personal property the execution first issued takes precedence.

At the sheriff's sale, had in the month following, under these four executions and another for a small amount, Simpson bought in a large part of the personal property and practically all the real estate, the personal property being sold for $74,698.50 and the real estate for $26,490. The proceeds of this sale of the personal property, after deducting fees, etc., were paid to Simpson by crediting the amount to him on account of his purchase at the sale, and the proceeds of the real estate were disposed of by taking Simpson's receipt as president of the bank for $12,000 thereof, applied upon the execution upon the plaintiff's judgment, and by crediting the balance to Simpson on account of his purchase. An execution upon plaintiff's judgment was also issued to Philadelphia, and certain property there was bought in by the plaintiff for $150, and was afterwards resold by it for $5,000.

In addition, Simpson received certain cattle stock which was afterwards sold for $5,000. To enable Simpson to close his purchase with the sheriff without paying cash, a formal assignment of the plaintiff's judgment was made to him, but by agreement between Simpson and the bank it was provided that after payment of his own claim he would pay the full amount of the indebtedness of Wainwright & Bryant, as drawers and indorsers of notes discounted by the bank, and not otherwise paid or secured to be paid.

*Abel E. Blackmar* and *Edward S. Fowler*, for the appellants.

*William J. Fanning* and *Frederick H. Man*, for the respondent.

O'BRIEN, J.:

The causes of action were upon twelve promissory notes made by the defendants Smith to the order of Wainwright & Bryant, and by them indorsed and delivered to plaintiff. There was no contest as

to the making and delivery of the notes, or as to the title of the plaintiff to the same, but it was contended that the defendants Smith were accommodation makers, and that the notes were made for the accommodation of Wainwright & Bryant. It was further contended that Wainwright & Bryant placed certain securities with the plaintiff to secure the payment of these notes with others, and that the plaintiff had realized certain sums of money upon said securities, and had negligently wasted and destroyed a part thereof, and that the defendants Smith were entitled to have the amounts realized by the plaintiff on such securities applied to the payment of these notes *pro rata* with others, and also that the value of the securities wasted by the plaintiff should be credited on these notes.

The referee found, against the contention of plaintiff, that all the notes except one were accommodation paper; that the plaintiff had received $22,000 applicable to the payment of these notes, with others; and directed that $3,389.48 be credited *pro rata* upon the principal of the notes. The plaintiff does not appeal, but the defendants Smith do, claiming that they were entitled to a larger credit, and that all the notes were accommodation paper.

In holding that eleven of the twelve notes were accommodation notes, the referee reached a conclusion most favorable to the appellants, and with such conclusion, we understand, no fault is found, it being insisted, however, that the twelfth note also should have been included in the same category. In excluding it, we think the referee was clearly right. Under the terms of the agreement, the defendants Smith had a right to use the notes sent them by Wainwright & Bryant in exchange for notes of similar amount and tenor which they had loaned to that firm. If they had availed themselves of this privilege and had used the notes, there can be no doubt, upon authority, that they would be regarded as business notes, because given in exchange for other notes and used for the purpose of raising money. Where, however, but one was used and the other eleven retained, we find no reason for relieving the defendants Smith from liability as makers of business paper. It appearing, then, as to one of the Wainwright & Bryant notes, *i. e.*, the one dated August 6, 1889, for $1,154.13, that the defendants Smith, for their own benefit, had it discounted at the bank, the referee was right in holding that the counterpart note given to Wainwright & Bryant, which was dis-

counted by the plaintiff, was included among the twelve notes sued upon and, unlike the other eleven, was not an accommodation note.

The other eleven notes being accommodation notes, the referee held that the ultimate duty of paying them rested on Wainwright & Bryant, and that any payments made by the latter or securities given by them inured to the benefit of the defendants Smith, whose obligation was that of sureties. To the extent to which they were entitled to the benefit of the security thus given, which consisted of the judgment note for $122,313, covering these and other notes of Wainwright & Bryant, the referee allowed the *pro rata* amount realized under the judgment upon the sale of the real property, and $10,000 in addition realized from two other sources, making up the amount of $22,000, which he held was applicable to the payment of the notes.

The appellants claim, however, that they were entitled to a greater credit, and that, in addition to the proceeds of the real estate, there should have been applied upon the notes the *pro rata* share of the proceeds of the personal estate of Wainwright & Bryant which the plaintiff should have realized upon the judgment given to it to secure the notes. Whether this contention is right depends entirely upon the determination of the question as to whether, under the law, Simpson, who was president of the bank and to whom Wainwright & Bryant were indebted in a large sum of money, for which he held their judgment notes, violated a duty, which, as president of the bank, he was chargeable with, towards the appellants, in giving himself a preference out of the avails of the personal property.

It was in the power of Simpson to seize all of Wainwright & Bryant's property at any time during a long period prior to the giving to him of the judgment note for the bank. Had he reaped the advantage of his position by so seizing the property, the appellants as against him would have no legal right to complain. It may be that considering his relation to the bank and the use that he had made of its funds, it might compel him in some way or in some form of action, to make good the loss which, under his management, the bank sustained. Without, however, discussing the rights of the bank, it is clear that no third party, situated as the appellants are, could successfully assail Simpson's right to obtain, were he so dis-

posed, a preference in respect to Wainwright & Bryant's property over all other creditors. It must be remembered too that in the disposition of their property among their creditors, Wainwright & Bryant selected Simpson as the person who was to make it and constituted him their agent for that purpose, and they had a right to instruct him, had they seen fit, as to the manner in which the property should be applied; or they could leave it, as they did, to his discretion, in exercising which the appellants would have no more right to complain than if the disposition had been made by Wainwright & Bryant themselves. As correctly said, therefore, by the referee: "In the absence of proof, the act of Simpson may be considered to be just what Wainwright & Bryant intended. Hence, the bank cannot be held to stand as having received in payment of the Smith notes that which Simpson managed to apply to his notes through the instrumentality of Wainwright & Bryant." As urged by the respondent, the bank owed no duty to the Smiths requiring it to take the judgment note at all, or to enter judgment thereon in an endeavor to thrust aside Simpson's security, which was prior in equity and in point of time, even if it had the power to do so. The question here raised is, not as to what rights the bank might claim against Simpson on the facts disclosed, but solely whether the Smiths, as so-called accommodation makers of the notes held by the bank for which it had been paid full value, can hold the bank liable for something which it neither did nor permitted. It is well established that the holder of negotiable paper loses no right against the surety thereon by merely remaining passive. (*First Nat. Bank of Buffalo* v. *Wood*, 71 N. Y. 405, 411; *Smith* v. *Erwin*, 77 id. 466.) We do not think that the act of Simpson and Corss, although they were the president and the attorney respectively of the bank, in permitting Simpson to obtain a priority upon the personal property, made the bank liable for a breach of duty and chargeable, as though lost, with the amount that would have been realized had the bank's judgment attached equally with Simpson's upon the personal property.

Another grievance asserted by the appellants consists in the refusal of the referee to find that the bank had realized $20,000 on the execution against the real property and finding instead that it had realized only $12,000. Mr. Simpson, the president of the bank,

testified that $20,000 was realized on the real property; but that this statement was made from memory, and that it was incorrect, is evident from the original documents, which include the receipt of Mr. Simpson and the sheriff's return. Besides, it appears that the real estate was sold for $26,490; and regard being had to the amount of the four judgments, the bank's *pro rata* share of the proceeds would be about $12,000, the amount found by the referee. There being a conflict between the oral testimony and these written documents, we think, upon consideration, that the referee was right in following the latter as against the statement of the witness.

Although the referee has charged the plaintiff with $22,000 as having been realized upon the bank's judgment, there is a serious question whether the entire value of the collateral security, including the judgment note, and the entire amount with which it is chargeable in favor of the appellants, was more than $12,150. The $22,000 found by the referee was made up of $12,000, the proceeds of the execution issued on the bank's judgment to the sheriff of Jefferson county, and of $5,000, which he charged to the bank as being the amount realized on the resale by it of the property sold under the execution issued to the sheriff of Philadelphia, and which it bought in at such sale for $150, and of $5,000, the amount realized from the sale of certain cattle stock which Wainwright & Bryant had given to Simpson at the date of their failure. The amount of $150 realized on the sale of the Philadelphia real estate would seemingly be the proper credit which the bank was entitled to allow, because any profits realized on the resale thereof could no more be reached as a security in appellants' favor than would a loss, had it been made upon such resale, have been chargeable to it, and the referee, instead of charging the bank with $150, has charged it with $5,000 in appellants' favor. The $5,000, proceeds of the cattle stock, as testified to by Bryant, was given by him to Simpson, as he understood individually for his indebtedness. This amount, however, was appropriated by Simpson to the bank, under their agreement *pro tanto*, on the Wainwright & Bryant notes, and the referee allowed the payment. It will thus be seen that the referee reached upon these items a conclusion most favorable to the appellants.

The remaining question urged upon this appeal is in regard to the

order granting to the plaintiff an allowance in addition to costs of $386.07. In view of the amount and the character of the questions involved, this cannot be regarded as an excessive allowance. It is insisted, however, by the appellants that they should not be punished, by way of an allowance granted against them, for having interposed equitable defenses which in part have been sustained. The answer to this seems to us apparent. It is true that the plaintiff asked a judgment for the full amount of the notes, upon the theory that they were business paper, and that the appellants took the opposite view, that they were accommodation notes, and while the former demanded the full amount, the appellants insisted that the complaint should be dismissed. While the plaintiff did not obtain the entire relief demanded, we do not think it can be claimed that it has not succeeded in the action. Apart from this, if the appellants had desired to limit their liability for costs, the Code provides a way by permitting a person to make an offer of judgment, which if not accepted would place the liability for costs upon the other party. This the appellants did not do, but litigated the question of plaintiff's right to any recovery, and the plaintiff having recovered and been awarded costs, in view, as already said, of the difficulty of the questions involved, we think it was entitled to the allowance made.

In concluding, we think it proper to say that we might well have let this appeal rest upon the clear and satisfactory opinion of the referee, but as the appellants with much force and earnestness have pressed the questions again upon our consideration, we feel that a brief reference to all the questions presented upon the appeal was proper.

We think the conclusion reached by the referee was right, and that the judgment and order should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment and order affirmed, with costs.